**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

                                Docket No: 21-1414
                                USDC PR 18-1049

LASHAUN CASEY,

      Defendant – Appellant.

_____ /

**APPELLANT CASEY'S APPLICATION FOR CERTIFICATE
OF APPEALABILITY WITH INCORPORATED BRIEF IN SUPPORT**

**TABLE OF CONTENTS**

Table of Contents ……………………………………………………….. i

Certificate of Interested Persons ……………………………………… ii

Table of Authorities ……………………………………………….... iv

Application ……………………………………………………… 1

Brief in Support of Application ……………………………………… 1

Statement of the Case ………………………………………………… 2

Argument …………………………………………………………..... 3

    A. "Substantial Showing of Denial of a Constitutional Right" –
    The § 2255 Motion Sufficiently Alleges Constitutional Claims ……... 5

    B. "Substantial Showing of Denial of a Constitutional Right" –
    Ineffective Assistance of Counsel by Failing to Suppress the
    Statements due to the Violation of his Prompt Presentment Before
    the Magistrate Judge ..………………………………………………… 9

Conclusion ……………………………………………………….. 13

Certificate of Service …………………………………………… 14

ii

## TABLE OF AUTHORITIES

**Cases**

*Barefoot v. Estelle,*
  463 U.S. 880 (1983) ........................................................................... 7-8

*Brown v. Sternes,*
  304 F.3d 677 (7th Cir. 2002) ................................................................ 7

*Buck v. Davis,*
  580 U.S. ____, 137 S.Ct. 759 (2017) .................................................... 3

*Cal. Daily Op. Service 7844, 92 D.A.R. 12730,*
  1992 U.S. App. LEXIS 21603 ............................................................. 12

*Casey v. United States,*
  137 S. Ct. 839 (2017) .......................................................................... 3

*Casey v. United States,*
  2021 U.S. Dist. LEXIS 67889 (D.P.R. Mar. 30, 2021) ............................ *passim*

*Corley v. United States,*
  556 U.S. 303 (2009) ........................................................................... 10

*Crawford v. Washington,*
  541 U.S. 36 (2004) ............................................................................... 5

*Feliciano-Rodríguez v. United States,*
  986 F.3d 30 (1st Cir. 2021) .................................................................. 7

*Fuller v. Johnson,*
  114 F.3d 491 (5th Cir. 1997) ............................................................... 4

*Harris v. Reed,*
  894 F.2d 871 (7th Cir. 1990) ............................................................... 7

*Melendez-Diaz v. Massachusetts,*
  557 U.S. 305 (2009) ............................................................................. 5

*Miller-El v. Cockrell*,
  123 S. Ct. 1029 (2003) ............................................................................... 3, 4, 8

*Morris v. Beard*,
  No. 01-3070, 2007 U.S. Dist. LEXIS 44707 (E.D. Pa. June 20, 2007) .............. 7

*New Mexico*,
  131 S.Ct. 2705 ......................................................................................... 5, 6

*Pledger v. United States*,
  1998 U.S. App. LEXIS 1615 (1st Cir. Feb. 5, 1998) ......................................... 11

*Rosales v. Dretke*,
  133 F. App'x 135 (5th Cir. 2005) .......................................................................... 4

*Slack v. McDaniel*,
  529 U.S. 473 (2000) ............................................................................................ 3-4

*Sorto v. Davis*,
  672 F. App'x 342 (5th Cir. 2016) ......................................................................... 4

*Swisher v. True*,
  325 F.3d 225 (4th Cir. 2003) ............................................................................... 9

*Tennard v. Dretke*,
  542 U.S. 274 (2004) ............................................................................................. 3

*United States v. Alvarez-Sanchez*,
  975 F.2d 1396 ..................................................................................................... 12

*United States v. Casey*,
  825 F.3d 1 (1st Cir. 2016) .................................................................................... 3

*United States v. Fouche*,
  776 F.2d 1398 (9th Cir. 1985) ............................................................................. 11

*United States v. Perez*,
  733 F.2d 1026 (2d Cir. 1984) .............................................................................. 10

iv

*United States v. Valenzuela-Espinoza*,
   697 F.3d 742 (9th Cir. 2012) ............................................................. 10

*United States v. Wilson*,
   838 F.2d 1081 (9th Cir. 1988) ...................................................... 10, 12

*Valerio v Dir. of the Dep't of Prisons*,
   306 F.3d 742 (9th Cir. 2002) ............................................................... 9

## Rules

Fed. R. App. P. 22 ...................................................................... 1, 3

## Statutes

Title 18 U.S.C. § 922 ................................................................. 2, 3

Title 18 U.S.C. § 924 ..................................................................... 3

Title 18 U.S.C. § 3501 ................................................................... 9

Title 18 U.S.C. § 2119 ................................................................... 2

Title 18 U.S.C. § 3501 ................................................................. 12

Title 28 U.S.C. § 2253 ............................................................. 1, 3, 9

Title 28 U.S.C. § 2255 ........................................................... *passim*

## APPLICATION

The defendant-appellant, Lashaun Casey ("Casey"), has appealed to this Court from the final order of the U.S. District Court for the District of Puerto Rico, (Delgado-Colon, A.), filed and entered on March 30, 2021, denying his motion to vacate sentence under 28 U.S.C. § 2255. (DE:1124). The district court's judgment also reflected the denial of a certificate of appealability ("COA"). (DE:1124 at 18-19). Accordingly, Casey now applies to this Court, or any Circuit Judge thereof, pursuant to First CIR. R. 22, for issuance of a COA under 28 U.S.C. §§ 2253(c)(1)(B), 2255(d), and Fed. R. App. P. 22(b)(1) to allow him to pursue an appeal to this Court from the denial of his § 2255 motion.

## BRIEF IN SUPPORT OF APPLICATION

By way of explanation for its denial of a COA, the District Court, without explication, summarily declared that "to merit a COA, an applicant must make a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner made no such showing here. Thus, the Court will not issue him a certificate. Therefore, a COA is DENIED." (DE:1124 at 18-19). However, that was merely boilerplate wording with no application to Casey's petition. Contrary to the District Court's decision,

reasonable jurists could disagree and conclude instead that Casey's § 2255 motion did articulate the denial of several constitutional rights and that the district court's denial was procedurally erroneous.  Accordingly, this Court or a judge thereof should grant the requested COA and direct the Clerk to set a briefing schedule.

## STATEMENT OF THE CASE

Police of Puerto Rico Drug Division officials including José Agosto and Commander Morales, the Director of the division, arrested Casey shortly before midnight on August 1, 2005. Casey was driving a rental truck used by undercover agent Jesús Lizardi, whom they supervised in the execution of a plan to buy four pounds of marijuana in Culebra from "Alexander" using Casey as the contact. Lizardi and Casey failed to show up in Culebra.  Eventually, Lizardi went missing. Lizardi's body was found on August 5, 2005, in a ravine below an abandoned structure in Luquillo.

On August 3, 2005, a criminal complaint against Casey was filed charging possession of a firearm in violation of 18 U.S.C. §922(g).  That was superseded on August 17, 2005, via an indictment charging carjacking and related charges.  On February 14, 2007, a second superseding indictment with the death-penalty qualifying allegations on which Casey was tried, was returned, charging, count one carjacking with intent to cause death, in violation of 18 USC 2119(3); count two, use, carriage, brandishing and discharging a firearm during and in relation to a

carjacking with malice and premeditation, causing death, in violation of 18 U.S.C. §924(c) and count three, possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. §922(g)(1). Casey was found guilty on all counts. After a jury trial, during the penalty phase, the jury returned a special verdict recommending life in prison. The court sentenced Casey to life in prison. (DE:1093). An appeal was sought, however, on June 3, 2016; the First Circuit Court of Appeals affirmed the sentence and conviction. *United States v. Casey*, 825 F.3d 1 (1st Cir. 2016). On January 23, 2017, the Supreme Court denied the request for a writ of certiorari. *Casey v. United States*, 137 S. Ct. 839 (2017). On March 30, 2021, the District Court denied his 2255 and the request for a certificate of appealability. *Casey v. United States*, No. 18-1049 (ADC), 2021 U.S. Dist. LEXIS 67889 (D.P.R. Mar. 30, 2021). This request follows.

## ARGUMENT

The instant application seeks a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(B) and Fed. R. App. P. 22(b)(1), because the correctness of the District Courts' disposition on the merits of the ineffectiveness claims are at least "debatable" among jurists of reason. See, *Buck v. Davis,* 580 U.S. ____, 137 S.Ct. 759, 773–75 (2017) (reiterating governing standard for issuance of COA); *Tennard v. Dretke*, 542 U.S. 274, 282–83 (2004); *MillerEl v. Cockrell*, 537 U.S. 322, 335–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting

3

*Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)); *see also Sorto v. Davis*, 672 F. App'x 342, 346 (5th Cir. 2016) (defendant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved differently or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see also Rosales v. Dretke*, 133 F. App'x 135, 137 (5th Cir. 2005) (any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination); *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997). To obtain a COA, the showing of possible error need not be conclusive. Far from it. As explained in *Miller-El*, a "claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail" 537 U.S. at 338. In short, § 2253(c) establishes a low threshold for granting a COA. *Buck v. Davis,* 137 S.Ct. at 773–75. "We reiterate what we have said before: A 'court of appeals should limit its examination [at the COA stage] to a threshold inquiry into the underlying merit of [the] claims,' and ask 'only if the District Court's decision was debatable.'" *Id.* at 774 (bracketed insertions original), quoting *Miller-El*, 537 U.S. at 327, 348. Here, the request for certificate of appealability should be granted since the District Court's decision "was debatable'" in light of the newfound facts. *Buck v. Davis,* 137 S.Ct. at 774.

**A. "Substantial Showing of Denial of a Constitutional Right" – The § 2255 Motion Sufficiently Alleges Constitutional Claims**

The District Court denied Casey's motion on the premise that the "Court is not persuaded that counsel's failure to object to the introduction of this particular forensic report constituted an error 'so serious as to deprive Casey of a fair trial' or result in a complete miscarriage of justice." *Strickland,* 466 U.S. at 687; *David,* 134 F.3d at 474. Consequently, Casey's ineffective assistance claims on this front fail." *Id. Casey v. United States,* No. 18-1049 (ADC), 2021 U.S. Dist. LEXIS 67889, at *10 (D.P.R. Mar. 30, 2021). The court also reasoned that "even if we assume that counsel's failure to object "was so patently unreasonable that no competent attorney would have made" such an error, Casey has not demonstrated how he was prejudiced by this deficiency." *Id.* at. *9. However, that logic stretches the boundaries of the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts,* 557 U.S. 305, 309 (2009), and *Bullcoming v. New Mexico,* 131 S.Ct. 2705 (2011). The results of a prejudice showing should not be the blanket that saves this confrontational violation. The 2255 was revolved over whether counsel was ineffective in failing to object, then waive the *Crawford* objection for no apparent reason. The government originally designated Tina Delgado as the witness who would introduce the DNA report. Casey moved under *Crawford,* to exclude her testimony because Delgado did not bear a sufficient connection to the scientific testing

involved in the report's preparation. The Court deferred a ruling since the matter was not "ripe for consideration" at the time of the objection. Later, on the eve of trial, the government designated two DNA reports authored by Carna Meyer ("Meyer") and a third authored by Brendan Shea ("Shea"). The government then called Meyer to testify to introduce all three reports. *Id. Casey v. United States*, No. 18-1049 (ADC), 2021 U.S. Dist. LEXIS 67889, at *4-5 (D.P.R. Mar. 30, 2021). Critical here is that when the government moved to admit the three reports into evidence, the district court asked Casey if there were any objections -- to which his counsel squarely replied, "[n]o, Your Honor." Nor did Casey lodge a single objection to Meyer's endorsement of Shea's report, or her subsequent testimony about all the reports' specific results. During a sidebar the next day on a separate issue, Casey's counsel affirmed this stance, stating the defense "ha[s] not disputed the DNA."[1] Casey argued on his 2255 that counsel was ineffective by waiving the objection to the introduction of the evidence under a *Crawford* violation which was not addressed by the lower court in the order of denial of the 2255.[2] There was no

_____

[1] Casey's trial counsel made no objection to the reports nor did he object to Meyer's endorsement of Shea's report despite her lack of involvement in the report's preparation. *Id.* at 4-5.

[2] Counsel objected to the introduction of the evidence the prior day under *Crawford, Melendez-Diaz* and *Bullcoming*. The court merely denied the request without prejudice since the issue was not yet "ripe" for consideration. When the matter became "ripe" for consideration, counsel waived the right to object to the *Bullcoming* violation. (3:18cv01049, DE:1 at 17).

affidavit from counsel explaining what strategy, if any, was followed for waiving and not preserving on appeal the objection. (3:18cv01049, DE:6). There was no reasoning offered by trial counsel or the court why the *Crawford* objection was waived. Neither can the court offer any. *Harris v. Reed*, 894 F.2d 871, 878 (7th Cir. 1990) ("Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer."); *Morris v. Beard*, No. 01-3070, 2007 U.S. Dist. LEXIS 44707, at *80 (E.D. Pa. June 20, 2007). *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir. 2002). (At the same time, we realize that it is not the role of a reviewing court to engage in a post hoc rationalization for an attorney's actions by "constructing strategic defenses that counsel does not offer" or engage in Monday morning quarterbacking.) At a minimum, the objection would have preserved the claim for appellate review. Absent an explanation from trial counsel why the lodged objection was waived, the lower court's order of denial should be allowed to proceed further. The lower court's order, as rendered, encourages further encouragement to proceed since the claim is debatable. A "substantial showing" means "that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further." *Feliciano-Rodríguez v. United States*, 986 F.3d 30, 36 (1st Cir. 2021) (quoting, *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S.

7

Ct. 3383, 77 L. Ed. 2d 1090 (1983). Counsel's waiver of the Crawford objection

and subsequent effects on Casey's appeal was not addressed by the lower court

thus reaching encouragement to proceed further. The prejudice umbrella should not

cover the error committed by counsel.

*Miller-El* made clear that whether to grant a COA is intended to be a

*preliminary* inquiry, undertaken before full consideration of the petitioner's claims.

*Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003) (noting that the "threshold

[COA] inquiry does not require full consideration of the factual or legal bases

adduced in support of the claims"); *Id.* at 1040 (noting that "a claim can be

debatable even though every jurist of reason might agree after the COA has been

granted and the case has received full consideration, that petitioner will not

prevail") (emphasis added); *Id.* at 1042 (noting that "a COA determination is a

separate proceeding, one distinct from the underlying merits"); *Id.* at 1046-47

(Scalia, J., concurring) (noting that it is erroneous for a court of appeals to deny a

COA only after consideration of the applicant's entitlement to habeas relief on the

merits). Indeed, such "full consideration" in the course of the COA inquiry is

forbidden by § 2253(c). *Id.* at 1039 ("When a court of appeals sidesteps [the COA]

process by first deciding the merits of an appeal, and then justifying its denial of a

COA based on its adjudication of the actual merits, it is, in essence, deciding an

8

appeal without jurisdiction."). *Swisher v. True*, 325 F.3d 225, 229-30 (4th Cir. 2003).

This Court need only agree that Casey is entitled to have the case proceed further, not that he will be victorious on the merits of his claim. Even if the District Court has denied all the claims without an evidentiary hearing, (an error in this case) this Court has the authority to grant the relief and expand upon it. V*alerio v Dir. of the Dep't of Prisons,* 306 F.3d 742 (9th Cir. 2002), *cert denied* (2003) 538 U.S. 994, 155 L.Ed 2d 695, 123 S.Ct. 1788) (court of appeals not only has power to grant COA where the district court has denied it as to all issues but also to expand COA to include additional issues when the district court has granted COA as to some but not all issues.)  Because a reasonable jurist could disagree with the District Court's conclusion, without granting a hearing or expanding the record, a Certificate of Appealability should be granted on the constitutional issues identified in this motion.

**B. "Substantial Showing of Denial of a Constitutional Right" – Ineffective Assistance of Counsel by Failing to Suppress the Statements due to the Violation of his Prompt Presentment Before the Magistrate Judge**

This claim required an evidentiary hearing to address counsel's logic in not filing a motion to suppress after a 36-hour delay in presenting Casey before the Magistrate Judge.  See, 18 U.S.C.§ 3501 "safe harbor period for certain

voluntary confessions." *Corley v. United States,* 556 U.S. 303, 129 S. Ct. 1558 (2009). Section 3501(c) provides that "a confession . . . shall not be admissible solely because of delay in bringing such person before a magistrate judge or other officer . . . if . . . such confession was made or given by such person within six hours immediately following his arrest or other detention." No justification for the delay was challenged by counsel pre-trial. The "*ineffectiveness of counsel*" on this claim on not addressing the delay was not addressed. The delay was a law enforcement tactic to secure a confession from Casey, by interjecting Casey's grandfather, securing permission to search Casey's room then confronting Casey with the results of the search. All of these delays in presenting Casey before a Magistrate Judge was justified by *any of the reasons* the lower court justified in its order. [3] Even if any of the justifiable reasons the court addressed applied, none of

---

[3] Ironically, the lower court relies on *Galindo-Serrano* to justify its reasoning why Casey could not have been brought before the Magistrate Judge within the 36-hours after his arrest. *Id.* (Casey at *19). This court in *Galindo-Serrano* determined a slew of reasons why *Galindo-Serrano's* presence should not have been delayed. See, e.g., *United States v. Perez,* 733 F.2d 1026, 1035 (2d Cir. 1984) (finding no "shortage of manpower" where "more than six agents were assigned to the case, and . . . one of them could have taken [the defendant] to the then available magistrate"); *United States v. Valenzuela-Espinoza,* 697 F.3d 742, 752 (9th Cir. 2012) (noting that "the fact that one officer out of nine was fulfilling his responsibility to obtain a search warrant did not make the delay reasonable under McNabb—Mallory"); *cf. United States v. Wilson,* 838 F.2d 1081, 1085 (9th Cir. 1988) (finding the delay unreasonable where "arraignments were being conducted one flight upstairs from the room where [the defendant] was being questioned, and the magistrate was open for business while [the defendant] was being questioned").

them justify a 36-hour delay in taking Casey before the Magistrate Judge.  There

was no reason why counsel did not file the motion to suppress all his pre-trial

statements.[4]  Even further the prejudice in not preserving the claim for appeal,

cannot be understated.    Thus, the ineffectiveness aspect of this claim, reaches the

"encouragement to proceed further hurdle has been met.  *Pledger v. United States*,

1998 U.S. App. LEXIS 1615, at *1 (1st Cir. Feb. 5, 1998) (In order to qualify for a

certificate of appealability, a habeas petitioner must make a substantial showing of

the denial of a constitutional right, i.e., a showing that the issues are debatable

among reasonable jurists, that a court could decide them in a different fashion, or

that they are adequate to deserve encouragement to proceed further.)  A 36-hour

delay in presenting Casey before a Magistrate Judge and no objection from counsel

whatsoever, cannot be considered adequate representation.  See, *United States v.*

*Fouche*, 776 F.2d 1398, 1985 U.S. App. LEXIS 24062 (9th Cir. 1985), *app. after*

*remand*, 833 F.2d 1284, 1987 U.S. App. LEXIS 4664 (9th Cir. 1987) (Twenty-

hour delay in bringing suspect before a magistrate is unreasonable prearraignment

---

The court in *Galindo-Serrano* ultimately determined that the Defendant had
waived his right to file a motion to suppress.  No waiver exists in Casey's case.

[4] In 2011, Casey moved to suppress all statements elicited from him while in police
custody as well as the contents of the overheard conversation he had with his wife
allegedly in violation of his *Miranda* rights. Casey's counsel, however, did not
address the so-called *Mosley* concern that arose during his time in custody as
Casey initially invoked his right to remain silent while in custody at Canóvanas
and that right was not "scrupulously honored" while he was in custody at Ceiba.
*See Michigan v. Mosley*, 423 U.S. at 104.

delay where only explanation offered by the government for the delay is that government agents assigned to the case are busy investigating whether a suspect has been involved in other bank robberies, at time suspect confesses he is without the benefit of counsel, notwithstanding the previous equivocal request for counsel, and suspect is confined in police car with same agents who had interrogated him on prior day.); *United States v. Wilson*, 838 F.2d 1081, 1988 U.S. App. LEXIS 1641 (9th Cir. 1988) (it was error to deny motion to suppress confession even though defendant had been informed of his Miranda rights and there was no evidence that he ever expressed desire to have attorney present or that he was unwilling to speak to officers or that he did not understand his rights); *United States v. Alvarez-Sanchez*, 975 F.2d 1396, 92 Cal. Daily Op. Service 7844, 92 D.A.R. 12730, 1992 U.S. App. LEXIS 21603 (9th Cir. 1992), *cert. granted*, 510 U.S. 912, 114 S. Ct. 299, 126 L. Ed. 2d 247, 1993 U.S. LEXIS 6328 (1993), *remanded*, 511 U.S. 350, 114 S. Ct. 1599, 128 L. Ed. 2d 319, 1994 U.S. LEXIS 3300 (1994) (Avoidable deliberate delay engaged in after long period of custody for sole purpose of interrogating arrestee required suppression of confession under 18 USCS § 3501). The ineffectiveness aspect of this claim, reaches the level of encouragement to proceed further. Because a reasonable jurist could disagree with the District Court's conclusion, without granting a hearing or expanding the

record, a Certificate of Appealability should be granted on the constitutional issues identified in this motion.

## CONCLUSION

For all the foregoing reasons, and any others that may occur to the Court, this Court – or any Circuit Judge thereof – should grant a Certificate of Appealability allowing the appellant, to pursue and file a brief in support of the issues raised herein.

Dated August ____ 2021

_____

Lashaun Casey
Register Number: 28733-069
USP Thomson
PO Box 1002
Thomson, IL  61285

## CERTIFICATE OF SERVICE

I HEREBY DO CERTIFY, that a true and correct copy of this motion was mailed to the recipients noted below sufficient First-Class Postage: US Attorney's Office, USDC-PR, Torre Chardon, Suite 1201, 350 Chardon Ave San Juan, PR 00918.

Dated August ____. 2021

_____
Lashaun Casey
Register Number: 28733-069
USP Thomson
PO Box 1002
Thomson, IL  61285

# Casey v. United States

United States District Court for the District of Puerto Rico

March 30, 2021, Decided; March 30, 2021, Filed

Civil No. 18-1049 (ADC); Crim. No. 05-277-1 (ADC)

**Reporter**

2021 U.S. Dist. LEXIS 67889 *; __ F. Supp. 3d __; 2021 WL 1821899

LESHAUN CASEY, Petitioner, v. UNITED STATES OF AMERICA, Respondent.

**Prior History:** United States v. Casey, 2006 U.S. Dist. LEXIS 36584 (D.P.R., June 5, 2006)

**Counsel:** [*1] *Lashaun Casey*, Petitioner, Pro se, WAYMART, PA.

For USA, Respondent: Mariana E. Bauza, LEAD ATTORNEY, United States Attorneys Office, District of Puerto Rico, San Juan, PR; Thomas F. Klumper, United States Attorneys Office, District of Puerto Rico, San Juan, PR.

**Judges:** AIDA M. DELGADO-COLÓN, United States District Judge.

**Opinion by:** AIDA M. DELGADO-COLÓN

## Opinion

### OPINION AND ORDER

*Lashaun Casey* (Casey") moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. **ECF No. 1**. The government responded. **ECF No. 6**. Petitioner replied. **ECF No. 10**. For the reasons set forth below, petitioner's §2255 motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

In 2005, the Puerto Rico Police Department ("PRPD") assigned Agent Jesús Lizardi-Espada ("Lizardi") to investigate Casey in an undercover role. On August 1, 2005, Lizardi arranged to take a ferry to Culebra with Casey to purchase four pounds of marijuana from drug supplier Alexander Hernández ("Alexander"). A PRPD team travelled to Culebra by plane to await Lizardi and Casey's arrival. Lizardi and Casey, however, did not arrive on the ferry as planned and a search for the pair ensued. Later that day, agent José Agosto-Rivera ("Agosto") found Casey at his workplace, a Holiday [*2] Inn hotel, and recognized Lizardi's grey Ford pickup truck in the hotel parking lot. After agents witnessed Casey leave the hotel in Lizardi's truck, Casey was arrested and taken to PRPD general headquarters where he was read his rights, signed a *Miranda* waiver, and began being questioned at about 12:50 a.m. on August 2nd by PRPD agent Diana Marrero ("Marrero"). Over the next few hours, Casey indicated his willingness to help officers in their search for Lizardi, leading officers to the homes of individuals in the drug trafficking world. These leads, however, produced no results.

At about 6:00 a.m. on August 2nd, Casey was brought to another PRPD station in Canóvanas, where the FBI assumed jurisdiction. At this point, Casey indicated to agent Marrero that he no longer wished to speak with law enforcement and asked to see his grandfather. Casey's grandfather, with whom Casey lived, arrived at the station and gave consent for the agents to search Casey's bedroom at

---

[1] As Casey does not claim that any newly discovered evidence is implicated in his § 2255 motion, the facts in this section are summarized from the First Circuit's opinion following Casey's direct appeal. *Casey v. United States*, 825 F.3d 1 (1st Cir. 2016).

their home. Shortly after 12:00 p.m. on August 2nd, FBI agents transported Casey to its premises in Ceiba. Upon arrival, FBI agent Luis Moulier ("Moulier") read Casey his *Miranda* rights again and he exercised his right to remain [*3] silent.

No further questioning ensued until around 2:00 p.m. when agent Marrero approached Casey without repeating his *Miranda* rights and confronted him with the evidence that was found in his bedroom.[2] Casey responded with the statements: "maybe he is alive, maybe he is dead" and that he was "sunk with the evidence." Agent Marrero then pressed for Casey to reveal more details but he refused and, at some point in the exchange, Casey asserted his right to an attorney. Around 4:00 p.m., agents allowed Casey's wife into the interview room to speak with him while a PRPD agent remained in close proximity. The agent overheard Casey make statements including "killing a cop is a federal case," and "they seized a lot of evidence at the house but they don't have the body, anyway, he was an undercover cop and he knew he was on his way to do a drug deal with me and could come out dead or alive." Casey made his initial appearance before a U.S. Magistrate Judge on August 3, 2005. A few days later, following further investigation, Lizardi's deceased body was found in a wooded area behind an abandoned structure in Luquillo with two gunshot wounds in his head.

In February 2007, a grand jury indicted Casey [*4] on three counts: (1) carjacking with the intent to cause death or serious bodily injury under 18 U.S.C. § 2119(3); (2) possession, use, discharge carrying of firearms during a crime of violence resulting in another's death under 18 U.S.C. § 924(j); and (3) being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). In July 2007, the government filed its notice to seek the death penalty and pretrial proceedings took place over the next six years. In 2011, Casey moved to suppress

all statements elicited from him while in police custody as well as the contents of the overheard conversation he had with his wife allegedly in violation of his *Miranda* rights. Casey's counsel, however, did not address the so-called *Mosley* concern that arose during his time in custody as Casey initially invoked his right to remain silent while in custody at Canóvanas and that right was not "scrupulously honored" while he was in custody at Ceiba. *See Michigan v. Mosley*, 423 U.S. at 104.

In 2013, this Court denied his motion apart from certain statements he made after invoking his *Miranda* protections in the 2:00 p.m. encounter at Ceiba.[3] *See United States v. Casey*, No. 3:05-cr-00277-ADC-1, ECF No. 793, 2013 U.S. Dist. LEXIS 202668 (D.P.R. Jan. 23, 2013) (Delgado, J., Opinion and Order). Later, on the eve of trial, the government [*5] designated two DNA reports authored by Carna Meyer and a third authored by Brendan Shea. The government then called Meyer to testify to introduce all three reports. Casey's trial counsel made no objection to the reports nor did he object to Meyer's endorsement of Shea's report despite her lack of involvement in the report's preparation.

Following a nine-day trial, a jury convicted Casey of all counts but rejected the death penalty. **Crim. No. 05-277-1, ECF No. 965**. On June 13, 2013, Casey was sentenced to life in prison. **Crim. No. 05-277-1, ECF No. 1093**. Casey then filed a timely direct appeal in the First Circuit challenging a wide array of the district court's decisions made before and during his trial. **Crim. No. 05-277-1, ECF No. 1096**. On June 3, 2016, the court of appeals affirmed his conviction. *Casey v. United States*, 825 F.3d 1 (1st Cir. 2016). On January 23, 2017, the Supreme Court denied certiorari. *See id., cert. denied*, 137 S. Ct. 839, 197 L. Ed. 2d 77 (Jan. 23, 2017). The parties do not dispute that Casey's §

---

[2] The search of Casey's room yielded a loaded firearm, Lizardi's cell phone, and a pair of blood-stained flip flops.

[3] This Court's opinion and order refers to Casey's statement "I don't know what you're talking about," which he made after he invoked his right to an attorney.

2255 petition was timely filed.

## II. **STANDARD OF REVIEW**

"Section 2255 is not a surrogate for a direct appeal." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). "Rather, the statute provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was [*6] imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." *Id.* The "catch-all" fourth category includes only errors that reveal "fundamental defects" which, if uncorrected, will "result in a complete miscarriage of justice." *Id.* (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)). Accordingly, the burden is on the petitioner to make out a case for § 2255 relief because his claim "must reveal exceptional circumstances that make the need for redress evident." *Id.* To this end, we may deny Casey's petition without an evidentiary hearing if the "motion and the files and records of the case do not conclusively show that [he] is entitled to relief." *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) (internal citation and quotations omitted).

The Sixth Amendment's guarantee of the right to counsel "is the right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To succeed on an ineffective assistance of counsel claim, a defendant must demonstrate both: (1) "that his counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." *Rossetti v. United States*, 773 F.3d 322, 327 (1st Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. at 687). Under the first prong, "we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, finding deficiency [*7] only 'where, given the facts known to counsel at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it.'" *Rossetti*, 773 F.3d at 327

(quoting *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)). Under the prejudice prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694).

## III. ANALYSIS

Casey brings a host of ineffective assistance of counsel claims.[4] His petition challenges his counsel's conduct before and during trial on three main grounds: (1) that his counsel failed to object to the testimony of a surrogate witness who testified to introduce three DNA reports; (2) that his counsel failed to argue, under *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975), that certain statements he made while in police custody should be suppressed; and (3) that his counsel failed to argue that all statements he made while in police custody should have been suppressed as they were obtained in violation of the prompt presentment rule. **ECF No. 1**.

### *A. Surrogate Witness Testimony*

Casey claims that he received ineffective assistance because counsel failed to object to the introduction of forensic evidence reports through Carna Meyer, a purported "surrogate witness." [*8] It is well-established that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, is "testimonial" for Confrontation Clause purposes. *See Meléndez-Díaz v. Massachusetts*, 557 U.S. 305, 310, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009). "Absent stipulation . . . the prosecution may not introduce such a report without offering a live witness competent to testify to the truth of the report's statements." *Bullcoming*

---

[4] It is well-established that a defendant can assert ineffective assistance of counsel claims for the first time in a collateral motion made under § 2255. *Massaro v. United States*, 538 U.S. 500, 504-05, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003); *Rossetti v. United States*, 773 F.3d 322, 326 n.2 (1st Cir. 2014).

*v. New Mexico*, 564 U.S. 647, 651, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011). In *Bullcoming*, the Court found that the scientist who certifies a forensic report is the only witness "competent" to testify as to the veracity of that report. *Id.* at 661 (finding that analysts who write reports must be available for confrontation). The Court went on to state that, like other rules of evidence, a forensic report prepared by one witness can only be entered into evidence through the in-court testimony of a second witness "who did not sign the certification or perform or observe the test reported in the certification" if the witness who prepared the report is unavailable. *Id.* at 657. Moreover, a Confrontation Clause violation of this nature can be deemed harmless if the "uncertified" report being introduced is merely "cumulative" and "the properly admitted evidence against [the defendant] is overwhelming." *See Barbosa v. Mitchell*, 812 F.3d 62, 68 (1st Cir. 2016) (finding no error where surrogate witness based her opinion on DNA testing [*9] she did not perform because report was cumulative and defendant had fair opportunity to confront surrogate as to basis of her opinion).

Casey contends that the government's use of Meyer as the live witness to introduce Shea's report violates the Supreme Court's rule espoused in *Bullcoming* and violates the Confrontation Clause. Accordingly, his counsel's failure to object to the introduction of this report was constitutionally deficient and fell outside the wide "range of reasonable professional assistance." *Knight*, 447 F.3d at 15 (quoting *Strickland*, 466 U.S. at 689). However, even if we assume that counsel's failure to object "was so patently unreasonable that no competent attorney would have made" such an error, Casey has not demonstrated how he was prejudiced by this deficiency. *Id.* That is, he has not demonstrated, with any reasonable probability, that the disqualification of Shea's report would have altered the result of his trial. *Knight*, 447 F.3d at 15.

The record shows that the prosecution introduced three DNA reports through Meyer: two of which she authored and the third authored by Shea. **Crim.**

**No. 05-277-1, ECF No. 860**. As the government correctly notes, Meyer testified that she reviewed the underlying data and conducted the same statistical analysis as Shea to produce [*10] her own reports. *Id.* Her testimony, including her expert opinion regarding the results of Shea's report, was subject to vigorous cross-examination by Casey's counsel. *Id.* Thus, the introduction of Shea's report was merely cumulative to the DNA evidence introduced at trial and had no "substantial and injurious effect on the verdict." *Barbosa*, 812 F.3d at 69.

This Court is not persuaded that counsel's failure to object to the introduction of this particular forensic report constituted an error "so serious as to deprive" Casey of a fair trial or result in a "complete miscarriage of justice." *Strickland*, 466 U.S. at 687; *David*, 134 F.3d at 474. Consequently, Casey's ineffective assistance claims on this front fail.

### B. Statements Admitted in Violation of Mosley

Next, Casey claims that certain statements he made while in police custody were adduced from questioning that occurred after he invoked his *Miranda* rights. It follows, according to Casey, that his counsel's performance was constitutionally deficient by failing to argue in favor of suppressing these statements under *Michigan v. Mosley*, 423 U.S. 96, 96 S. Ct. 321, 46 L. Ed. 2d 313 (1975). "Where an ineffectiveness claim is based on counsel's decision not to file a suppression motion, the petitioner must demonstrate that a meritorious claim formed the basis of the proposed motion [*11] in order to establish deficient performance." *Johnston v. Mitchell*, 871 F.3d 52, 60 (1st Cir. 2017) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 374, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) (O'Connor, J., concurring)). Accordingly, we turn our attention to the merits of Casey's *Mosley* claim.

In *Mosley*, the Supreme Court found that "the admissibility of statements obtained after the person in custody has decided to remain silent

depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Id.* at 104 (quoting *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). In analyzing whether it was proper for police to resume questioning, the *Miranda* right being invoked by the defendant is noteworthy. *See United States v. Oquendo-Rivas*, 750 F.3d 12, 17-18 (1st Cir. 2014). If the defendant invokes his right to counsel, "questioning must invariably cease until a lawyer is provided." *Id.* at 17. Conversely, if the defendant invokes his right to remain silent, the police are not automatically barred from resuming questioning at a later time. *Id.* Rather, a court will balance four factors to determine whether the right to remain silent was "scrupulously honored" under *Mosley*: (1) whether a reasonable period of time passed prior to the resumption, (2) whether the same officer resumed questioning, (3) whether the suspect received refreshed *Miranda* warnings, and (4) whether questioning concerned the same alleged crime. *Oquendo-Rivas*, 750 F.3d at 17-18. Our "ultimate [*12] review," however, must account for the totality of the circumstances "with an eye on determining whether the suspect retained the ability to choose whether and when to speak." *Id.* at 18.

In his petition, Casey does not distinguish which specific statements he is referring to or whether he invoked his right to an attorney or to remain silent under *Miranda*. The record, however, shows that he invoked his right to remain silent around 12:00 p.m. upon arriving at Ceiba, and after he received refreshed *Miranda* warnings from agent Moulier.[5] *Casey*, 825 F.3d at 19. Around 2:00 p.m., agent Marrero began questioning Casey without repeating his *Miranda* rights. *Id.* At some point during this questioning, Casey asserted his right to an attorney. *Id.* at 20. While subsequent questioning produced some statements after the invocation of this right,

this Court suppressed those statements before trial. *See United States v. Casey*, No. 3:05-cr-00277-ADC-1, ECF No. 793, at 16, 2013 U.S. Dist. LEXIS 202668 (D.P.R. Jan. 23, 2013) (Delgado, J., Opinion and Order). Thus, presumably at issue here are the statements Casey made to agent Marrero prior to invoking his right to an attorney—that he was going down with the evidence and that "maybe [Lizardi] is alive, maybe he is dead." **Crim. No.** [*13] **05-277-1, ECF No. 739** at 41; *see also Casey*, 825 F.3d at 20.

Under the first factor, the reasonableness of the time between the two rounds of questioning, the record shows that approximately two hours passed from the time Casey initially invoked his right to remain silent to when agent Marrero resumed questioning. While it is "unwise and unworkable . . . to try to demarcate a one-time-fits-all limit for assessing reasonableness," *Oquendo-Rivas*, 750 F.3d at 18, the Court in *Mosley* found the passage of "more than two hours" to be reasonable. *Mosley*, 423 U.S. at 104; *Andrade*, 135 F.3d at 106 (finding two hours to be reasonable interval); *Contra United States v. Barone*, 968 F.2d 1378, 1383 (1st Cir. 1992) (finding that statement obtained after "momentary cessation" in interrogation must be suppressed); *Oquendo-Rivas*, 750 F.3d at 18 (suggesting that twenty minutes may be unreasonable period between rounds of questioning). Even if we assume that this nearly two-hour lapse in questioning was reasonable, this factor is not dispositive and may be offset by other circumstances. *Barone*, 968 F.2d at 1385; *see also Oquendo-Rivas*, 750 F.3d at 18 (finding that defendant's rights were scrupulously honored despite twenty-minute lapse in questioning).

Under the totality of the circumstances, a review of the second, third, and fourth factors against the two-hour time lapse compels us to conclude that Casey's *Mosley* claim was highly [*14] likely to fail. With respect to the second factor, Casey received a fresh round of *Miranda* rights at Ceiba from agent Moulier and was questioned later on by agent Marrero. Our analysis, however, cannot be

---

[5] In his reply to the government's opposition, Casey refutes this fact and claims that he invoked his right to an attorney upon being Mirandized by agent Moulier. ECF No. 10 at 4-5. He provides no support for this assertion and the record plainly contradicts his current position.

constrained to this two-hour interval. After all, this was not Casey's first interaction with agent Marrero while in custody.

Notably, upon Casey's arrest on August 1, agent Marrero presented Casey with a form acknowledging that he had been informed of his *Miranda* rights. *Casey*, 825 F.3d at 19. The parties do not dispute that Casey voluntarily signed the form, knowingly waived his rights, and indicated his willingness to speak to agent Marrero about Lizardi's whereabouts. *Id.* Casey was later transferred to Canóvanas, where he indicated to agent Marrero that he no longer wished to speak with law enforcement shortly after 6:00 a.m. on August 2. *Id.* Agent Marrero did not pursue further questioning at Canóvanas. *Id.*

The record is devoid of any evidence suggesting that agent Marrero, or any other officer, engaged in coercive tactics from the time of Casey's arrest to the time the relevant statements were made. *Compare Barone*, 968 F.2d at 1384 (suppressing statements where police threatened defendant with physical danger to "pressure" [*15] him into changing his mind about remaining silent), *with Andrade*, 135 F.3d at 107 (admitting statements where there was no "repeated attempt to reverse" defendant's refusal to talk through "undue pressure"). In fact, agent Marrero scrupulously honored Casey's right to remain silent when he invoked it shortly after 6:00 a.m. at Canóvanas and she did not resume questioning until 2:00 p.m. at Ceiba. The only other interaction during this interval occurred when Casey received a fresh round of *Miranda* warnings upon arriving at Ceiba. *See Miranda v. Arizona*, 384 U.S. 436, 496-97, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (suggesting that suspect taken into custody by "second authority, removed from time and place from his original surroundings, and then adequately advised of his rights" may be questioned).

Still, perhaps the most significant factor weighing against the admissibility of Casey's statements is the fact that agent Marrero did not remind him of his *Miranda* rights immediately prior to the 2:00 p.m. questioning. *See Oquendo-Rivas*, 750 F.3d at 17-18 (assessing whether suspect received "fresh" *Miranda* warnings); *Andrade*, 135 F.3d at 107 (finding "no doubt" suspect retained ability to choose when to speak where police reminded him of warnings immediately prior to second interrogation). Any concerns regarding this fact, however, are assuaged [*16] by Casey's invocation of his right to an attorney at some point during the exchange with agent Marrero. This fact, coupled with Casey's decision to remain silent with agent Moulier but to answer agent Marrero, suggests that Casey was fully aware of his *Miranda* rights and "was in charge of the decision whether and to whom he would speak." *Andrade*, 135 F.3d at 107 (finding rebuff of one agent was not "couched as a refusal to talk with anyone"). In sum, Casey's voluntary waiver of rights upon arrest, subsequent choice to remain silent at Canóvanas, and reminder of his *Miranda* rights at Ceiba all suggest that there is "no reason to doubt" that Casey was fully aware of his right to remain silent and was not unduly pressured into speaking with agent Marrero in the second round of questioning. *Andrade*, 135 F.3d at 107.

Accordingly, Casey's *Mosley* argument lacks merit and his counsel's failure to address it does not amount to deficient performance under the first prong of *Strickland*. *Johnston*, 871 F.3d at 60. It is well settled that "a lawyer's performance does not fall to the level of a Sixth Amendment violation under *Strickland* simply because the lawyer fails to pursue any and all nonfrivolous strategies." *Johnston*, 871 F.3d at 63. "Counsel also is not required to have a tactical reason—above and beyond a reasonable [*17] appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

*C. Suppression of Statements in Violation of Prompt Presentment Rule*

Lastly, Casey claims that all his statements made while in police custody should have been suppressed because they were obtained in violation of the prompt presentment rule. **ECF No. 1**, at 21. As such, Casey argues that he received ineffective assistance because counsel failed to bring this argument at his suppression hearing. Like his *Mosley* claim, "the petitioner must demonstrate that a meritorious claim formed the basis of the proposed motion in order to establish deficient performance." *Johnston v. Mitchell*, 871 F.3d 52, 60 (1st Cir. 2017) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 374, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) (O'Connor, J., concurring)).

Under Federal Rule of Criminal Procedure 5(a)(1)(A), "a defendant who has been arrested within the United States is entitled to be brought 'without unnecessary delay before a magistrate judge.'" *United States v. Jacques*, 744 F.3d 804, 813 (1st Cir. 2014) (quoting Fed. R. Crim. P. 5(a)(1)(A)). "The right to speedy presentment not only checks the likelihood of coercive questioning, but also avoids 'all the evil implications of secret interrogation of persons accused of crime.'" *Id.* (quoting *Corley v. United States*, 556 U.S. 303, 307, 129 S. Ct. 1558, 173 L. Ed. 2d 443 (2009)).

To protect this right, the Supreme Court promulgated the *McNabb-Mallory* rule, which "stipulates that confessions made during [*18] a period of detention that violates the prompt presentment requirement of Rule 5(a) are generally inadmissible in federal courts." *Id.* (citing *Corley*, 556 U.S. at 309). In response to the *McNabb-Mallory* rule, however, Congress enacted 18 U.S.C. § 3501 to create a safe harbor period for certain voluntary confessions. *Corley*, 556 U.S. at 309. Section 3501(c) provides that "a confession . . . shall not be admissible solely because of delay in bringing such person before a magistrate judge or other officer . . . if . . . such confession was made or given by such person within six hours immediately following his arrest or other detention."

Thus, section 3501(c) sets up a two-part inquiry

when determining whether statements made to law enforcement violate the right to prompt presentment. *Jacques*, 744 F.3d at 814. "First, the section creates a safe-harbor for voluntary statements that are received either within six hours of a defendant's detention, or within a longer period deemed reasonable in light of travel or transportation difficulties." *Id.* If the statements fall within that period, and were made voluntarily, they are admissible. *Corley*, 556 U.S. at 322. Where a voluntary statement falls beyond a safe harbor, "section 3501(c) then requires a court to determine whether the delay was nevertheless reasonable or necessary under *McNabb-Mallory*." *Jacques*, 744 F.3d at 814. [*19] If the delay was unreasonable and unnecessary under *McNabb-Mallory*, the statements are to be suppressed. *Corley*, 556 U.S. at 322.

"What explains the delay at issue" is the critical question for determining whether a delay in presentment was reasonable or necessary under *McNabb-Mallory*. *United States v. Galindo-Serrano*, 925 F.3d 40, 49 (1st Cir. 2019). "The *McNabb-Mallory* rule was designed to deter police from engaging in lengthy pre-arraignment detentions for the purpose of further interrogating a defendant." *United States v. Garcia-Hernandez*, 569 U.S. 1100, 1106 (9th Cir. 2009). Thus, "delay is unreasonable and unnecessary when it is 'of a nature to give opportunity for the extraction of a confession.'" *Id.* (quoting *Mallory v. United States*, 354 U.S. 449, 455, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957)). Conversely, a reasonable delay could be attributed to "legitimate administrative concerns" or "any other legitimate law enforcement purpose." *Galindo-Serrano*, 925 F.3d at 49; *see also Jacques*, 744 F.3d at 814 ("delay may be reasonable if caused by administrative concerns, such as unavailability of a magistrate following an arrest, or by a shortage of personnel.").

In *United States v. Boche-Perez*, 755 F.3d 327, 337 (5th Cir. 2014), the Fifth Circuit found that, under *McNabb-Mallory*, "law enforcement personnel are permitted, within reasonable limits, to investigate

whether the crime occurred; search and secure a premises; and secure, confiscate, or destroy contraband before taking an arrestee to a magistrate." *Boche-Perez*, 755 F.3d at 337 (collecting cases). In other words, *McNabb-Mallory [*20]* does not require law enforcement officers "to drop everything and rush to the magistrate when doing so would imperil public safety." *Id.*

We find that, while Casey's statements fell outside of the six-hour "safe haven" articulated in section 3501(c), the approximate 36-hour delay in his presentment before a magistrate was reasonable and necessary as the entirety of the delay can be attributed to legitimate law enforcement purposes.

First, upon Casey's arrest, Agent Lizardi was still missing and the investigating officers had no indication as to whether he was alive or dead. Casey was brought into custody at PRPD headquarters, waived his *Miranda* rights, and offered to help law enforcement find Lizardi. This initial portion of Casey's detention clearly constitutes a period where agents were investigating whether a crime occurred—a legitimate law enforcement purpose recognized by federal courts. *See Boche-Perez*, 755 F.3d at 337-38. Moreover, Casey's waiver of his rights indicates that any statements he made during this period were voluntary.

During the second portion of Casey's detention following his transfer to Canóvanas, the investigating agents still had not found Lizardi, but were able to question Casey's grandfather when he arrived [*21] at the station. Casey's grandfather consented to a search of Casey's bedroom at his home. Agents then conducted said search in an effort to find evidence related to Lizardi's whereabouts and did not continue questioning Casey during the time it took to complete the search. This period did not constitute an unreasonable delay for two reasons. First, the delay can be attributed to law enforcement's conversation with Casey's grandfather and subsequent search of his home, which are both "unrelated to any [effort at] prolonged interrogation." *Boche-Perez*, 755 F.3d at 336-37. Further, courts have recognized that a lawful search of a premises is a legitimate law enforcement purpose that can reasonably and necessarily delay an arrestee's right to presentment. *See Boche-Perez*, 755 F.3d at 337 (collecting cases).

Casey was then transferred to the FBI's facility at Ceiba. *See, e.g., United States v. Collins*, 462 F.2d 792, 796 (2d Cir. 1972) (finding delay necessary when moving arrestee through complexities of combined federal-state system). During this last portion of Casey's pre-arraignment detention, agent Marrero confronted him with the evidence found in his bedroom and pleaded with him to reveal Lizardi's whereabouts. Here, the initial portion of this questioning is the only relevant conduct as Casey's statements [*22] made after invoking his right to an attorney were suppressed prior to trial.

Due to the gravity of the circumstances regarding Agent Lizardi's whereabouts and unknown physical condition, we find that this brief period of questioning, cut off by Casey's request for counsel, served the primary purpose of ensuring public safety and not an attempt at prolonging an interrogation to obtain a confession. *See, e.g., United States v. Carter*, 484 F. App'x. 449, 457-58 (11th Cir. 2012) (finding delay in presentment reasonable where officers attempted, with arrestee's assistance, to locate weapon because purpose was to collect and preserve evidence and eliminate a potential danger to the public); *see also United States v. Sophoan Oung*, 490 F. Supp. 2d 21, 32 (D. Mass. 2007) (noting that "public safety exception" to *Miranda* applies "so long as questioning relates to an *objectively* reasonable need to protect the police . . . from any immediate danger") (emphasis in original).

Because the delay in Casey's presentment was reasonable and necessary for legitimate law enforcement purposes, namely, to locate Agent Lizardi, his prompt presentment claim lacks merit.

Accordingly, his ineffective assistance claim fails under the deficiency prong and we need not address the prejudice prong under *Strickland. See Johnston*, 871 F.3d at 60.

## IV. CERTIFICATE OF APPEALABILITY [*23]

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C.A. foll. § 2255. To merit a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Petitioner made no such showing here. Thus, the Court will not issue him a certificate. Therefore, a COA is **DENIED**.

## V. CONCLUSION

For the reasons stated above, Casey's § 2255 petition is **DENIED**, and his request for an evidentiary hearing is **DENIED**. The case is **DISMISSED WITH PREJUDICE**. He is also **DENIED** a COA. The Clerk of the Court shall enter judgment accordingly.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2021.

**/s/ AIDA M. DELGADO-COLÓN**

**United States District Judge**

End of Document

Lashaun Casey
Register Number: 28733-069
USP Thomson
PO Box 1002
Thomson, IL 61285



Office of the Clerk
USCA1
1 Courthouse Way, Suite 2500
Boston MA 02210-3004

Case: 21-1414　Document: 00117783506　Page: 29　Date Filed: 09/07/2021　Entry ID: 6444737